WR-64,017-05
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/17/2015 5:17:02 PM
Accepted 9/18/2015 8:10:35 AM
ABEL ACOSTA
CLERK

# RICHARD E. WETZEL
ATTORNEY AT LAW

1411 WEST AVENUE, SUITE 100
AUSTIN, TX 78701
(512) 469-7943

Board Certified Criminal Law
And Criminal Appellate Law by
The Texas Board of Legal Specialization

(512) 474-5594 - fax
wetzel_law @1411west.com
www.TexasCriminalAppealsLawyer.com

September 17, 2015

Joanna Staton
District Clerk
P.O. Box 909
Belton, TX
76513

Re: Ex parte Christopher Wimberly, No. 54,705-E

Dear Ms. Staton:

Enclosed, please find applicant's objections to the trial court's findings and conclusions in the above styled and numbered cause which I would ask you to file. The objections should be sent to the Court of Criminal Appeals in relation to their cause number WR-64,017-05.

Please file mark a copy of this letter and return same to me in the enclosed stamped and self-addressed envelope.

Thank you for your attention and cooperation in this matter.

Sincerely,

Richard E. Wetzel
Attorney at Law

cc: Court of Criminal Appeals
ADA Proctor

| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 27TH JUDICIAL DISTRICT |
| | § | |
| CHRISTOPHER WIMBERLY | § | BELL COUNTY, TEXAS |

## APPLICANT'S OBJECTIONS TO THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Comes now Christopher Wimberly, applicant in the above styled and numbered cause and would show the Court of Criminal Appeals the following:

On the day after it was filed, the trial court signed the State's 28 page proposed findings and conclusions without making a single change or correcting a single typographical error in the State's submission. By the instant pleading, Wimberly will demonstrate those findings and conclusions are flawed as a matter of law and not supported by the record. The Court of Criminal Appeals should undertake de novo review of the claim of actual innocence.

### The Erroneous Finding of Inconsistencies in Tones' Affidavits

The trial court finds that when Tones challenged his own aggravated robbery convictions, he attached an affidavit to his habeas petitions claiming "I would have told the jury at no time did I help Montgomery commit any robberies, nor did I know of his criminal acts" (Finding 39). During the evidentiary hearing, Tones

1

testified the robberies for which he was convicted were not the first robberies he committed (WRR 19). He committed a string of 12 to 15 aggravated robberies with the first on December 23 and the last on March 3, 2003 at the time of his arrest (WRR 19). He committed the robberies on his own until the final two robberies for which he was arrested (WRR 19). Edward Montgomery assisted him in those two robberies (WRR 19).

Noting the affidavit Tones provided to Wimberly admitting commission of the offense for which Wimberly was convicted, the trial court finds the two affidavits inconsistent because in own his habeas affidavits, Tones "denied committing any robberies" (Finding 42). Based on that finding, the trial court further finds the affidavits by Tones confusing, contradictory, and unpersuasive (Finding 95).

Wimberly asserts those findings are not supported by the record and should be disregarded by the Court of Criminal Appeals. An assertion by Tones that he would have testified he did not help a co-defendant in the commission of two offenses in March of 2003 for which he was being prosecuted, is not a claim denying the commission of any robberies including that for which Wimberly was convicted. The trial court errs in finding otherwise.

2

**The Erroneous Finding Regarding Gerard Gioioso**

The trial court finds that during the evidentiary hearing, Gerard Gioioso was unable to recall the weapon used during the robbery for which Wimberly was convicted (Finding 62). The record reflects otherwise. After reviewing his trial testimony describing the shotgun, Gioioso indicated the shotgun taken from Tones at the time of Tones' arrest was the type of weapon used during the robbery for which Wimberly was prosecuted (WRR 90).

**The Incomplete Findings Regarding David Sawchak**

The trial court entered findings concerning Sawchak's testimony (Findings 68-73). Within those findings, the trial court fails to acknowledge that during the evidentiary hearing, Sawchak testified that a picture of Wimberly from the time of the robbery did not match his memory of the robber based on facial hair, eyes, and height (WRR 105-106). Rather, Sawchak believed the picture of Tones had the greatest likeness to the robber based on his eyes and facial hair (WRR 105). The trial court further fails to acknowledge that Sawchak's estimate of the robber's height matched Tones' height rather than Wimberly's height (Finding 70, WRR 21, 58, and 103).

**The Erroneous Findings Regarding Karl Ortiz**

The trial court finds that during the investigation of the offense, Ortiz showed Gioioso a photospread in which Gioioso picked out Wimberly's picture as the robber (Finding 86). The record reflects that upon showing Gioioso the photospread, he was only 80% sure Wimberly was the robber (WRR 134, 4 RR 46).

The trial court finds that Gioioso described the weapon used during the robbery as a full length shotgun (Finding 89). The record reflects otherwise. At trial, Gioioso described the shotgun used in the offense as both sawed off and with a short stock (4 RR 32, 50). Moreover, during the evidentiary hearing, Gioioso described the weapon similar as to that taken from Tones as a sawed off pistol grip shotgun (WRR 90).

**The Erroneous Finding Regarding the Shotgun**

The trial court finds that the full size shotgun introduced into evidence at Wimberly's trial was identified as resembling the shotgun used by the robber (Finding 101). It wasn't. At trial, Gioioso described the shotgun used in the offense as both sawed off and with a short stock (4 RR 32, 50). Moreover, during the evidentiary hearing, Gioioso described the weapon similar as to that taken from Tones as a sawed off pistol grip shotgun (WRR 90).

4

## The Erroneous Finding on Tones' Credibility

Based on the above erroneous findings, the trial court finds Tones' confession and testimony are not credible (Finding 102). As demonstrated above, those findings are either incomplete or erroneous and not worthy of supporting a finding of lack of credibility.

## The Writ Writer Conspiracy Theory

The trial court finds Tones' confession was simply the product and "theory of a prison writ writer brought to life" (Finding 106). The finding is not supported by the record.

Tones first learned in 2008 or 2009 from another inmate, a writ writer, of Wimberly's conviction for a crime Tones had committed (WRR 24-25). Tones contacted several attorneys and the Innocence Project in an effort to find someone to help Wimberly (WRR 25-26). All of the lawyers wanted a fee up front and it took the Innocence Project several years to get back to him (WRR 25, 28).

Tones acknowledged he executed the March 3, 2014, affidavit attached to Wimberly's habeas application taking responsibility for the aggravated robbery (WRR 26). He did so freely and voluntarily and the statements in the affidavit are true and correct (WRR 26). After executing the affidavit, he sent a copy to the

5

Innocence Project (WRR 26). It was returned by the Innocence Project to him with the admonishment not to send materials unless first requested (WRR 26). After the affidavit was returned to him, Tones gave a copy to Wimberly "for him to do whatever he needed to do with it" (WRR 26). At the time he gave the affidavit to Wimberly, they were both housed on the McConnell Unit (WRR 27).

Tones testified he was motivated to help Wimberly in an effort to correct a wrong which had occurred (WRR 27). Since being in prison, he has become a Muslim and he attempts to follow the teachings of the Koran calling for making amends to those he has harmed and doing the right thing in order to reach heaven (WRR 27). He and Wimberly have no relationship in prison and simply see each other occasionally at the chow hall or on the sidewalk (WRR 27). Wimberly has not given him anything or promised him anything in return for Tones accepting responsibility for his own conduct (WRR 28).

In 2008 or 2009, Wimberly learned from a writ writer on the McConnell Unit that Tones might have committed the aggravated robbery for which Wimberly was convicted (WRR 63). The writ writer was suspicious because he knew of Tones committing a number of aggravated robberies at fast food restaurants in Killeen at the time Wimberly allegedly committed the aggravated robbery (WRR

6

63). The writ writer said he would confer with Tones to see if he was responsible for Wimberly's robbery (WRR 64).

Eventually, Wimberly learned from the writ writer that Tones committed the robbery and was willing to take responsibility for it (WRR 64). Wimberly's effort to secure legal assistance on presentation of the claim of actual innocence was unsuccessful (WRR 64). Wimberly received a hand written affidavit from Tones taking responsibility for the robbery in February of 2014 (WRR 64-65). Wimberly had the affidavit typed and it was executed by Tones in March of 2014 (WRR 65). Wimberly thought the affidavit was critical to his presentation of a claim of actual innocence and he needed it before he could file the application (WRR 65-66). Wimberly also made note of a newspaper article concerning Tones attached to his application as critical to presentation of his actual innocence claim (WRR 66). The article was secured after he obtained Tones' affidavit (WRR 66).

Wimberly has never shown Tones the offense report or witness statements for the offense for which he was convicted (WRR 66-67). He has not given or promised anything to Tones in return for his affidavit or testimony (WRR 67).

The writ writer conspiracy theory created by the trial court is just that, a theory. No evidence supports the finding and it should be summarily rejected by the Court of Criminal Appeals.

**The Ignored Newly Discovered and Available Evidence**

The trial court erroneously finds the only new evidence in support of Wimberly's claim is Tones' confession (Finding 111). That finding ignores the evidence presented during the evidentiary hearing ordered by the Court of Criminal Appeals.

The new evidence consists of Tones' confession, testimony, and the corroborative evidence before the trial court indicating Tones did in fact commit the offense for which Wimberly was convicted.

Tones committed a series of aggravated robberies at fast food restaurants in Killeen during the relevant time period. He committed five such robberies on the day of his arrest. His method of operation, including dress, disguise, and weapon of choice was consistent during the robberies except for the final two which involved an accomplice.

Gioioso's descriptions of the shotgun, both at trial and at the evidentiary hearing, match the shotgun taken from Tones at the time of his arrest. Gioioso's description of the robber's clothing at trial matches the clothing recovered from Tones at the time of his arrest.

Sawchak's description of the robber's shotgun at the evidentiary matches the shotgun recovered from Tones. At the evidentiary hearing, Sawchak testified that after viewing photographs of Wimberly and Tones from the relevant period of time, Tones most clearly resembled the robber.

Sawchak provided a height estimate to the police after the robbery. That estimate matches Tones rather than Wimberly.

Tones description of the offense both in his affidavit and testimony at the evidentiary hearing matches testimony at Wimberly's trial concerning the manner in which the robbery took place. Knowing those details could only occur by someone who was actually present during the robbery.

## How Dare Him Plead Not Guilty Without Proving It

The trial court finds fault with Wimberly denying, without elaboration, his involvement in the offense for which he was convicted (Finding 112). The record reflects the protestations of innocence by Wimberly have been ongoing for 13 years.

Wimberly has consistently maintained his innocence of the instant offense. He entered a plea of not guilty. When the State claimed at trial that guilt had been shown by the testimonies of Gioioso and Wynn, defense counsel sought to

9

challenge and discredits that identification testimony (5 RR 17, 22). Counsel had Wimberly stand before the jury and noted "he is a big man" (5 RR 22). Wimberly's explanation for the offense in the presentence report was "I didn't do it" (CR 43). He continued to maintain his innocence during the instant evidentiary hearing (WRR 67). Finally, the instant proceeding involving a claim of actual innocence tends to elaborate on Wimberly's assertion of innocence. Wimberly has shown by clear and convincing evidence that no rational juror would have convicted him had the newly available evidence been presented at his trial.

### The Instant Application is Not a Subsequent Application

The trial court erroneously concludes the instant application should be dismissed as a subsequent application (Conclusion 4). That conclusion is contradicted by the trial court's own findings and TEX. CRIM. PROC. CODE art. 11.07 § 4(a)(1).

The trial court finds Wimberly learned of Tones and his willingness to confess in 2008 or 2009 and therefore the actual innocence claim could not have been presented in Wimberly's third application which was denied on the merits in 2007 (Finding 108). However, the trial court finds the actual innocence claim could have been presented in Wimberly's fourth application which was dismissed as a subsequent application in 2013.

10

The trial court ignores the writ record. Wimberly testified he received a hand written affidavit from Tones taking responsibility for the robbery in February of 2014 (WRR 64-65). Wimberly had the affidavit typed and it was executed by Tones in March of 2014 (WRR 65). Wimberly thought the affidavit was critical to his presentation of a claim of actual innocence and he needed it before he could file the application (WRR 65-66). Without the evidence secured to support his claim of actual innocence in 2014, Wimberly could not have presented it in an application denied in 2013.

More importantly, under art. 11.07, the critical date for determining whether the instant application is a subsequent application is the filing date for the third application filed and denied on the merits in 2007. The statute establishes a bright line date of the filing date of a **previously considered** application. See art. 11.04 § 4(a)(1) (Emphasis added). The 2013 application which was dismissed as a subsequent application was not considered by the Court of Criminal Appeals.

The instant application is not a subsequent application because the factual basis of the claim was unknown and could not have been presented in the 2007 application which was previously considered and denied on the merits. This Court should reject the trial court's conclusion the application is subject to dismissal as a subsequent application.

11

**The Trial Court's Deficient Transmittal Order**

Contrary to the directive of the Court of Criminal Appeals' order of March 4, 2015, the trial court has failed to direct transmittal to the Court of Criminal Appeals the reporter's record and clerk's record from the underlying trial in State of Texas v. Christopher Wimberly, No. 54,705 in the 27th District Court of Bell County, Texas. The trial court has also failed to direct transmittal of a supplemental reporter's record from the evidentiary hearing conducted on July 9, 2015. Finally, the trial court has failed to direct that these objections be forwarded to the Court of Criminal Appeals. The trial court should comply with that which it was directed to do by the Court of Criminal Appeals.

**Prayer**

As demonstrated above, the trial court's findings and conclusion are fraught with errors. This Court is not bound by findings not supported by the record or conclusions contrary to law. Wimberly prays the Court of Criminal Appeals will reject the trial court's findings and conclusions, undertake de novo review, and grant the relief to which Wimberly which he has shown himself entitled.

Respectfully submitted,

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue, Suite 100
Austin, Texas 78701

(512) 469-7943
(512) 474-5594 (fax)
Wetzel_law@1411west.com

Attorney for Wimberly
Christopher Wimberly

## Certificate of Service

This is to certify a true and correct copy of the foregoing pleading was emailed to counsel for the State, Assistant District Attorney, Sean Proctor, at his email address of Sean.Proctor@co.bell.tx.us on this the 17th day of September, 2015.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

13